United States District Court
Southern District of Texas
**ENTERED**
August 30, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LATORRENCE TORRELL NEWMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-19-352 |
| | § | |
| OFFICER MARFO, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Latorrence Torrell Newman filed a civil rights complaint under 42 U.S.C. § 1983, suing officers of the Wynne Unit of the Texas Department of Criminal Justice. (Docket Entry No. 1, 19, 23, 26). Newman's initial and amended complaints identified Officer Marfo, Sergeant Walker, Sergeant Glaze, Major Boyd, Officer Adamos, Officer Simpson, and Lieutenant Reid as defendants. (*Id.*). After pretrial screening, the court dismissed the claims against Walker, Glaze, and Adamos because Newman failed to allege any wrongdoing by these individuals. (Docket Entry No. 51). This court later dismissed the claims against Marfo, Boyd, and Simpson, and the retaliation claim against Reid, because Newman had failed to exhaust his administrative remedies as to those claims. (Docket Entry Nos. 88, 89). Newman's claim against Reid for a First Amendment violation remained pending.

Reid has now filed a motion for summary judgment on the First Amendment claim. (Docket Entry No. 94). Newman has filed a response and an affidavit in support. (Docket Entry Nos. 96, 98). Because there are genuine factual disputes material to the court's determination of whether Reid is entitled to qualified immunity, the motion for summary judgment is denied. The reasons for this ruling are explained below.

I.      **Background**

Newman's verified complaint, consolidated amended complaint, and two supplements to the amended complaint lay out his allegations.  (Docket Entry Nos. 1, 19, 23, 26)  Newman alleges that he is Muslim and wears a beard as an expression of his faith.  (Docket Entry No. 19, p. 4).  He alleges that the warden approved him for a religious beard under TDCJ's grooming policy.  (*Id.*).  But he alleges that because he is able to grow only a goatee, some prison officials do not believe that his beard qualifies as a religious beard, and they have a practice of violating his First Amendment rights based on that belief.  (*Id.*)

Newman alleges that on March 30, 2019, Reid came into Newman's cellblock, took the ID cards of every inmate with facial hair, and escorted them to the barbershop.  (Docket Entry No. 23, p. 1).[1]  Once there, Reid gave Newman and the others the choice to either "be shaven or go to lock-up."  (*Id.*).  When Newman responded that his beard had been approved by the warden as a religious beard, Reid responded that "the warden isn't running nothing."  (*Id.*).  Reid required the inmates to shave their beards "whether [they] were in compliance or not."  (Docket Entry No. 26, p. 1).  Newman alleges that he submitted to shaving, "violat[ing my] religious rights as a Muslim" to avoid going to lock-up.  (Docket Entry No. 23, p. 1).

Reid filed a motion for summary judgment on qualified immunity, arguing that the undisputed facts establish that he did not violate Newman's constitutional rights by requiring him to comply with TDCJ's grooming policy for religious beards.  (Docket Entry No. 94, pp. 3-6).  Alternatively, Reid contends that he is entitled to qualified immunity because it was not clearly

---

[1]Newman's Step 1 grievance form relating to this incident, dated April 1, 2019, gives the date of the incident as March 28, 2019.  (Docket Entry No. 76-1, at 61-62).  The exact date is not material to the court's resolution of the issues.

2

established that requiring Newman to comply with TDCJ's grooming policy for religious beards violated the First Amendment. (*Id.* at 6-9).

## II.     The Legal Standards

### A.     Summary Judgment

"Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "In making that determination, a court must view the evidence 'in the light most favorable to the [nonmoving] party.'" *Id.* at 657 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact 'is material if its resolution could affect the outcome of the action.'" *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party satisfies its burden to show no genuine dispute of material fact, the burden shifts to the nonmoving party to show that the motion should not be granted. *See Edwards v. Continental Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (quoting *Ragas v. Tex. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). To meet that burden, "the nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Id.* (quoting *Ragas*, 136 F.3d at 458). "This burden will not be satisfied

3

by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient . . . to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)). In addition, Federal Rule of Civil Procedure 56 does not require the district court to "sift through the record in search of evidence to support" the nonmoving party. *Carr v. Air Line Pilots Ass'n Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Instead, the nonmoving party must identify specific evidence in the record and clearly explain how that evidence supports his or her claim. *Id.* But the court will "still draw all inferences in the plaintiff's favor." *Dyer*, 964 F.3d at 380 (quoting *Taylor v. Stevens*, 946 F.3d 211, 217 (5th Cir. 2019)).

### B.     Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacities to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins,* 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)), *cert. denied*, 141 S. Ct. 1058 (2021); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Claims of qualified immunity require the court to consider: "(1) [whether] the official violated a statutory or constitutional right, and (2) [whether] the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). The first prong requires the plaintiff to allege and prove facts that establish a violation of a constitutional right.

4

*Pearson*, 555 U.S. at 232.  The second prong is satisfied only if "'the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'"  *Tolan*, 572 U.S. at 656 (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).   And even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable under the circumstances.  *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

"[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it [back] to the plaintiff to show that the defense is not available."  *Garcia*, 957 F.3d at 600 (quoting *Ratliff v. Aransas County, Tex.*, 948 F.3d 281, 287 (5th Cir. 2020)); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To make the required showing, the plaintiff must show both a constitutional violation and that all reasonable officials, similarly situated, would have known the defendant's acts violated the Constitution.  *See Tamez v. Matheny*, 589 F.3d 764, 770 n.2 (5th Cir. 2009); *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001).

## C.     A Self-Represented Litigant's Pleadings

Because Newman is representing himself, the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts."  *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013) (internal quotation marks omitted)).  "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve

5

defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

## III.   Analysis

In general, prison inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)) (citations omitted); *see also Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam) (holding that the First Amendment is violated when prisoners are not afforded a "reasonable opportunity" to exercise their religious beliefs). "Lawful incarceration inherently involves the limitation of many privileges and rights, . . . [but] prisoners still benefit from some constitutional protections, including the First Amendment 'directive that no law shall prohibit the free exercise of religion.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017).

However, prisons may limit prisoners' exercise of their constitutional rights if those limits arise "from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 U.S. at 348; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (permitting a prison regulation to impinge on inmates' constitutional rights as long as the regulation "is reasonably related to legitimate penological interests"). TDCJ's grooming policy on religious beards attempts to maintain the balance between prisoners' rights to the free exercise of their religion and TDCJ's need to ensure the health and safety of its inmates. *See, e.g., Ali v. Stephens*, 822 F.3d 776, 784-85 (5th Cir. 2016).

The same considerations apply when the court is required to determine whether a prison official's application of a duly enacted prison regulation has violated a prisoner's First Amendment rights. *See Butts*, 877 F.3d at 585; *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) ("While we deal here with an action rather than a regulation, the same standard is applicable to determine

6

if the prison authorities' response to Jackson's writing is constitutionally permitted.").  A prison official's interference with a prisoner's First Amendment right to the free exercise of their religion may, in the absence of a legitimate governmental basis, be the basis for liability under § 1983.  *See, e.g., Sause v. Bauer*, 138 S. Ct. 2561, 2562-63 (2018) (holding that police officers who ordered a woman to stop praying during a search of her home may have violated her free exercise rights).  To determine whether the prison official may be held liable, the court must consider whether the prison official's action was a legitimate and neutral effort to enforce the identified prison regulation.  *See Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008).  If there is a fact question as to whether the prison official's objective is legitimate, summary judgment should be denied.  *Id.* at 612; *see also Butts*, 877 F.3d at 587 (reversing summary judgment when the evidence revealed a genuine factual dispute material to determining the legitimacy of the prison guard's actions in purporting to enforce prison policies concerning yarmulkes).

Newman does not challenge the substance or application of TDCJ's grooming policy for religious beards.  This case is not about whether that policy burdens Newman's First Amendment right to the free exercise of his religion.  Instead, the issue is whether Reid violated TDCJ's grooming policy by requiring Newman to shave an approved and compliant religious beard, resulting in a violation of Newman's First Amendment rights.

### A.      Violation of a Constitutional Right

Reid contends that he is entitled to qualified immunity because the undisputed facts show that he did not violate Newman's constitutional rights.  He argues that the TDCJ grooming policy serves a legitimate penological interest, and his act of making Newman shave his religious beard was a legitimate and neutral effort to enforce that policy.  But the summary judgment evidence

raises a genuine factual dispute material to determining whether Reid was enforcing or violating TDCJ's grooming policy.

The TDCJ grooming policy for religious beards in place before December 1, 2017, prohibited a prisoner from "sculpting" an approved religious beard. *See Jones v. Davis*, No. H-16-193, 2018 WL 6591582, at *2 (S.D. Tex. Dec. 13, 2018) (outlining the history of TDCJ's religious beard policy). Because "sculpting" was prohibited, a prisoner could not trim or shave his cheeks, neck, or mustache or otherwise alter the natural hairline of his beard. *Id.* (setting forth TDCJ's description of "sculpting"). However, effective December 1, 2017, TDCJ amended its grooming policy for religious beards to allow a prisoner to shave his cheeks, neck, and mustache, as long as the beard was kept "neatly trimmed" and as long as there were no lines, designs, patterns, or symbols cut or shaped into the beard. *Id.* After December 1, 2017, a prisoner's religious beard was not out of compliance with TDCJ's grooming policy even if the beard was "sculpted" unless the prisoner had lines, designs, patterns, or symbols cut or shaped into it. *Id.* at *1.

Newman filed a grievance on April 1, 2019, alleging that Reid had forced him to shave his compliant religious beard under threat of being put in "lock-up," violating his First Amendment rights. (Docket Entry No. 76-1, pp. 61-62). Reid responded that he ordered Newman to shave his beard because it was sculpted and therefore noncompliant with TDCJ's grooming policy. (Docket Entry No. 94-3, at 30). But as of March 30, 2019—the date of the incident—a "sculpted" religious beard was not noncompliant with the TDCJ grooming policy and had not been for over a year. Reid did not allege when the original grievance was filed, and he has not since filed an affidavit or other summary judgment evidence to show, that Newman was not approved to have a religious beard. Reid did not allege when the grievance was originally filed, or since file any summary judgment evidence to show, that Newman's beard was not neatly trimmed or that it had lines,

8

designs, patterns, or symbols cut or shaped into it.  The summary judgment evidence Reid offered does not support his contention that he was enforcing TDCJ's grooming policy when he ordered Newman to shave his beard.  The conflicts between the parties' allegations and the summary judgment evidence create genuine factual disputes material to determining whether Reid's order was a legitimate and neutral effort to enforce TDCJ's grooming policy.  This factual dispute makes summary judgment on qualified immunity improper.

Alternatively, Reid argues that even if his act was improper, it was an isolated incident that only temporarily inhibited Newman's free exercise of his religion and is therefore a *de minimis* harm.  But the Fifth Circuit does not limit First Amendment claims to those involving a substantial violation of the prisoner's rights.  *See Butts*, 877 F.3d at 585-86.  A *de minimis* analysis may be proper in the context of a claim under the Religious Freedom Restoration Act or the Religious Land Use and Institutionalized Persons Act, *see Mayfield*, 529 F.3d at 612-14, but not in a First Amendment free-exercise claim, *see id.* at 607-12; *see also Butts*, 877 F.3d at 586.  Reid is not entitled to summary judgment on the basis that any injury was *de minimis*.

### B.    Clearly Established Constitutional Right

Reid also argues that he is entitled to summary judgment under the second prong of the qualified immunity analysis because it was not clearly established "that requiring an inmate to bring his religious beard into compliance with the TDCJ grooming policy was a violation of the First Amendment's Free Exercise clause."  (Docket Entry No. 94, pp. 6-7).  Reid's argument ignores the factual dispute over whether Newman's beard was in compliance with TDCJ's grooming policy when Reid ordered him to shave.

The second prong of the qualified immunity analysis requires the court to determine whether "the state of the law at the time of the incident provided fair warning to the defendants

that their alleged [conduct] was unconstitutional." *Tolan*, 572 U.S. at 656 (alteration in original). "For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

If a reasonable prison official is enforcing prison policies that are intended to ensure the proper balance between an inmate's First Amendment rights and the prison's legitimate interests, that official would not have fair warning that his conduct is unconstitutional.  If a prison official is acting contrary to the prison rules and regulations designed to protect an inmate's First Amendment rights, a reasonable prison official would understand that what he is doing violates that prisoner's rights. *See Butts*, 877 F.3d at 585-86; *see also Ashaheed v. Currington*, No. 20-1237, 2021 WL 3502621, at *7-8 (10th Cir. Aug. 10, 2021) (the First Amendment right to free exercise was clearly established so that a reasonable officer would know that violating the prison's religious beard policy violated a prisoner's First Amendment rights).

Newman alleges that Reid ordered him to shave his approved religious beard even though it complied with the TDCJ grooming policy.  There is summary judgment evidence supporting this allegation.  If proven, Reid would not be entitled to qualified immunity.  Reid alleges, and points to evidence, that he reasonably believed that Newman's beard was not in compliance with TDCJ's grooming policy.  If his reasonable belief is proven, he would be entitled to qualified immunity. This factual dispute prevents the court from concluding that Reid is, or is not, entitled to qualified immunity.  The motion for summary judgment is denied.

**IV.     Conclusion and Order**

The motion for summary judgment, (Docket Entry No. 94), is denied.  The scheduling and docket control order entered on April 7, 2021, (Docket Entry No. 90), remains in effect.

SIGNED on August 27, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

11